IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                         17-CR-6079 (EAW)

    -v-

JAMES WALTON
                Defendant.

## GOVERNMENT'S TRIAL BRIEF AND
## NOTICES PURSUANT TO FED. R. EVID. 404(b) & 608/609

The United States of America, through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, John J. Field and Meghan K. McGuire, Assistant United States Attorneys, of counsel, hereby makes and files its submissions with regard to the May 13, 2019, trial in the above-referenced matter.

### STATEMENT OF THE CASE

The defendant, James Walton, was charged by a federal grand jury on August 22, 2017, with committing two felonies: (1) Bank Fraud, in violation of 18 U.S.C. § 1344; and (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Count 1 carries a maximum authorized sentence of 30 years imprisonment and a fine of $1 million. Count 2 imposes a mandatory two-year additional term of imprisonment, to run consecutive to any sentence imposed under Count 1.

Count 1 alleges both potential theories of criminal liability under Section 1344, that is, a scheme to defraud two FDIC-insured banks (M&T Bank and Tompkins Bank of Castile), and a scheme to obtain money under their custody and control by means of false and fraudulent pretenses, representations and promises. At bottom, the alleged scheme involved

defendant stealing security deposit refunds payable to his employer's tenants, which he accomplished by using false and fraudulent pretenses to obtain security deposit refund checks, forging the tenants' signatures, and then endorsing and depositing the checks into his own bank account. The indictment alleges that the scheme began in or about January 2011 and continued until in or about January 2014, and identifies 97 specific executions of the scheme by defendant.

Count 2 alleges that, during and in relation to Count 1, defendant knowingly and without lawful authority used the names and security deposit account numbers of others.

## THE EVIDENCE

The government anticipates presenting the following evidence in its case-in-chief at trial (not necessarily in the order listed), among other potential witnesses and/or exhibits:

1. Defendant's Confession. Defendant was interviewed by Special Agents of the FBI and, during the interview, admitted that he committed the charged crimes. Defendant explained that he needed the money, that it was easy to steal the money, and that he stopped because he was worried about getting caught. The government intends to present defendant's confession through the testimony of SA Alicia Zimmerman (formerly, Wojtkonski).

2. Testimony of Tom Thomas, Wendy Thomas & Wendy Oliver (formerly, Kettles). Tom and Wendy Thomas owned the business that employed defendant. Wendy Kettles was a co-employee (with defendant) of that business and discovered defendant's scheme to defraud after he left. These witnesses will testify about the business and its procedures, operations and records; defendant's duties, responsibilities and conduct while working there; tenant security deposits and refunds procedures; and the circumstances

surrounding the discovery of defendant's scheme. One or more of these individuals may offer lay opinion testimony about defendant's handwriting and the endorsements contained on the checks at issue.

3. Tenants. The government intends to call approximately 10 tenants whose security refund deposits defendant misappropriated and deposited into his account, and whose means of identification defendant used without authorization. The tenants are expected to confirm that they did not endorse the checks, give them to defendant, or otherwise authorize defendant to use their names and/or account information to take their security deposit refunds.

4. Bank representatives. The government plans to call a representative from M&T Bank and Tompkins Bank of Castile to explain the escrow account procedures that govern security deposits and security deposit refunds, including the creation of specific subaccounts for each tenant security deposit. The representatives will authenticate and explain certain forms and communications relating to the security deposits and refunds. In addition, to the extent that the business records of financial institutions are not authenticated and admitted pursuant to FRE 902(11) certifications (including, with respect to defendant's personal financial institution accounts), the government will use testimony of separate records custodians for M&T Bank, Tompkins Bank of Castile, First Niagara Bank, and various creditor financial institutions where defendant had accounts (e.g., credit card companies, an automotive lender and a consumer loan lender).

5. FDIC certifications. The government will prove the FDIC insurance status of M&T Bank and Tompkins Bank of Castile using domestic public records, in accordance with FRE 902(1), 902(2) and/or 902(11). If necessary, the government will call a representative from the FDIC to establish these matters.

6. Forensic Accountant. An FBI forensic accountant (Karen Leone) may testify about demonstrative and summary exhibits she prepared to present voluminous financial institution records to the jury, including charts that: (a) summarize the checks defendant embezzled; (b) summarize use of debt (credit card, auto loan, consumer loan) to finance his lifestyle during the indictment period; and (c) demonstrate that, over time, the amounts that defendant embezzled correlates with the amount of his increasing indebtedness. FA Leone may also testify about the contents of the source documents that she used to prepare the demonstrative and summary exhibits.

## ANTICIPATED EVIDENTIARY OR OTHER ISSUES

The government does not anticipate any unusual or complex evidentiary issues in this case.

The bulk of the government's exhibits will consist of financial institution records, charts summarizing those records, and routine business records created in the ordinary course of the victim's business operations.

The government may seek to introduce lay opinion testimony of representatives of victim's business, who in the course of their work became very familiar with defendant's handwriting and signature. These witnesses may testify that the endorsements on the backs of the embezzled checks match or are similar to defendant's handwriting and signature. Such

testimony is proper and admissible under Fed. R. Evid. 702 and 901(b)(2). *See, e.g., United States v. Samet*, 466 F.2d 251, 256-57 (2nd Cir. 2006).

<u>NOTICE OF POTENTIAL FED. R. EVID. 404(b) MATTERS</u>

The government may introduce specific additional instances of forgeries and embezzlement by defendant of tenant security deposits and/or security deposit refunds above and beyond those specifically listed as executions of the scheme in the indictment. (*See* Attachment E[1]). Such proof is not evidence of extrinsic crimes, wrongs or other acts, but rather, constitutes direct proof of the scheme and artifice alleged in the indictment. As such, this evidence is not within the scope of Fed. R. Evid. 404(b). *See, e.g., United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Similarly, proof of defendant's disposition of those funds is likewise direct proof of the crimes alleged in the indictment.

To the extent that proof of defendant's rising indebtedness is deemed to fall within the scope of Fed. R. Evid. 404(b), it is relevant and admissible to prove defendant's motive for committing the crimes alleged. *See, e.g., United States v. Abdallah*, 840 F.Supp.2d 584, 620-21 (E.D.N.Y. 2012) (evidence of financial problems highly probative of motive for scheme to defraud). As noted above, the government intends to present such evidence to the jury in the form of a summary exhibit, which the government will produce to the Court and the defense as soon as it has been completed. The government notes that the underlying source records, which are voluminous, were previously provided to the defense in discovery.

---

[1] Attachment E will be provided under separate cover to the Court

## NOTICE OF IMPEACHMENT EVIDENCE

The government does not plan to impeach defendant, should he testify, with evidence of prior convictions pursuant to Fed. R. Evid. 609, or his reputation for untruthfulness pursuant to Fed. R. Evid. 608(a).

If defendant testifies, the government does intend to question him pursuant to Fed. R. Evid. 608(b) regarding specific instances of lying to the Internal Revenue Service on his 2011, 2012, 2013 and 2014 income tax returns (Attachments A-D[2] hereto), including about his failure to disclose income earned from the embezzled checks. This inquiry is relevant to defendant's credibility and properly allowed as impeachment. *See, e.g.*, *United States v. Zandi*, 769 F.2d 229, 236 (4th Cir. 1985) (cross-examination concerning false information on tax returns was relevant to credibility and entirely appropriate).

Of course, if on direct examination, defendant testifies about a relevant fact, including for instance by offering "innocent explanations . . . or denying wrongdoing," the government may freely cross-examine defendant about such testimony without regard to constraints that might otherwise come into play under Fed. R. Evid. 404(b) and/or 608(b). *See, e.g., United States v. Abdallah*, 840 F. Supp. 2d at 618-619 ("[T]here is no rule of law that requires the prosecution to watch idly as a defense witness, including the defendant himself, affirmatively lies about a relevant fact during his direct testimony. Instead, subject to the Rule 403 balancing test, the prosecution is entitled to cross-examine the defendant regarding misrepresentations of fact made by the defendant during his direct testimony, so as to avoid the jury being misled and to permit the jury to properly assess his credibility.")

---

[2] Attachments A-D will be provided under separate cover to the Court

The government reserves the right to supplement this list, and will promptly advise the Court and counsel in the event that it discovers and intends to present additional evidence at trial.

DATED: Rochester, New York, April 5, 2019

| | |
|---|---|
| JAMES P. KENNEDY, Jr.<br>United States Attorney | JAMES P. KENNEDY, Jr.<br>United States Attorney |
| s/JOHN J. FIELD<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Western District of New York<br>100 State Street<br>Rochester, New York 14614<br>(585) 399-3933<br>john.field@usdoj.gov | s/MEGHAN K. MCGUIRE<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Western District of New York<br>100 State Street<br>Rochester, New York 14614<br>(585) 399-3922<br>meghan.mcguire@usdoj.gov |